UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY CZAPLINSKI,<br><br>        Plaintiff,<br><br>    v.<br><br>BOARD OF EDUCATION OF THE CITY OF VINELAND,<br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 15-2045<br>       (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, PC
By: Frank L. Corrado, Esq.
2700 Pacific Avenue
Wildwood, New Jersey 08260
     Counsel for Plaintiff

METHFESSEL & WERBEL, PC
By: Jennifer M. Herrmann, Esq.
2025 Lincoln Highway
P.O. Box 3012
Suite 200
Edison, New Jersey 08818-3012
     Counsel for Defendant

**IRENAS**, Senior District Judge:

   Plaintiff Mary Czaplinski ("Plaintiff") has brought suit against Defendant Board of Education of the City of Vineland ("Defendant") pursuant to 42 U.S.C. § 1983, asserting that Defendant's termination of her employment violates her constitutional rights to free speech.  Plaintiff now seeks a preliminary injunction against that termination.

1

Having held a hearing on March 26, 2015, and having reviewed the submissions of the parties, including Plaintiff's Complaint (Dkt. No. 1), Declaration (Dkt. No. 1-2), proposed Order to Show Cause (Dkt. No. 1-3), and supporting legal brief (Dkt. No. 1-4), as well as Defendant's letter-brief (Dkt. No. 4), the Court finds that Plaintiff has failed to show a likelihood of success on the merits or irreparable harm, and Plaintiff's request for injunctive relief will therefore be DENIED.[1]

## I.   Relevant Facts

Plaintiff Mary Czaplinski has worked as a security guard for the Vineland School District for 12 years. (Czaplinski Decl., Dkt. No. 1-2 ¶ 2)  On March 5, 2015, having learned on the news that black assailants had shot and killed a black Philadelphia police officer, Plaintiff posted the following comment on her private Facebook page: "Praying hard for the Philly cop shot today by another black thug … may[be][2] all white people should start riots and protests and scare the hell out of them."  (Id. ¶¶ 5-6)

---

[1] In denying Plaintiff's request for a preliminary injunction, the Court also denies Plaintiff's request for a temporary restraining order.
[2] There does not seem to be a dispute that the word "may" in this posting was a typographical error intended to say "maybe."  (Id. ¶ 8)

The following day, March 6, 2015, Plaintiff made two more posts: a photograph of the slain officer with the caption "This is what a hero looks like" at 3:57 p.m. and a comment at 6:38 p.m. stating the following:

> I made a comment last night about the black thugs that killed a philly cop . . . there are thugs of every race . . . im just tired of race cards being played all over the place . . . whether black, white, Mexican, Spanish, Puerto rican, Cuban, polish, Italian, irish . . . we are people . . . . Maybe if we all just accepted the fact things could change.

(Id. ¶ 9)

That same evening, March 6, 2015, at 7:28 p.m., someone using e-mail address diversitymattersvboe@gmail.com and the name "Save VBOE" anonymously forwarded Plaintiff's post to the district's superintendent Mary Gruccio and executive director of personnel Joseph Rossi.  (Id. ¶ 10)  The e-mail included the comment "What type of employes (sic) do you have posting 'black thugs' comments?  Employing racist security guards is trouble.  Diversity matters regardless of race.  Very troubling."  (Id.)

The next day, March 7, 2015, an unnamed colleague and supervisor notified Plaintiff that Mr. Rossi had placed her on administrative leave due to "something to do with social media" and that she should not report to work until further notice.  (Id. ¶ 11)  In response to Plaintiff's request for details, Mr. Rossi advised Plaintiff by e-mail that she could schedule a hearing for March 12; that the charges against her were "Conduct

3

Unbecoming a Public Employee" and "Other Sufficient Causes"; and that the matter involved a social media posting.  (Id. ¶ 13)

Plaintiff's hearing took place on March 12, 2015, and the next day, March 13, 2015, Mr. Rossi terminated Plaintiff's employment with a letter stating the following grounds:

> Your offensive and inflammatory remark is troubling for any person but it is especially inappropriate and disconcerting for a public school security officer. School personnel are entrusted to use training, judgment, and commitment to fairness to diffuse, resolve and/or appropriately react to disputes, rules violations, safety concerns, and other day-to-day events which might otherwise compromise student learning and school climate.
>
> Vineland is a very diverse school district of more than 11,000 pupils and 2,300 employees of varying backgrounds.  Your statement calls into question your effectiveness, going forward, as an unbiased arbiter of student or staff misbehavior or other incidents which call upon impartial judgment including respect and tolerance for diversity.  During our hearing you remarked, 'Even the black kids like me,' as if you felt the need to characterize students.
>
> A security officer engages in daily corrective action to help guide young people by justly and fairly evaluating situations and applying district policies/procedures. Your pronouncement has greatly jeopardized your ability to effectively conduct the business of public school safety and security because it reasonably calls into question the basis of your decision-making.

(Id. at Ex. J-1)

Plaintiff received Mr. Rossi's letter, along with a Final Notice of Discipline terminating her employment, on March 16, 2015.  (Id. ¶ 19)  Plaintiff disputes that her comments affect her ability to do her job and alleges that her termination

4

violates her constitutional rights to free speech.  (Id. ¶¶ 20-21)  She now seeks preliminary injunctive relief enjoining Defendant's termination of her employment, which takes effect March 27, 2015.

## II.  Discussion

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (*quoting Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  "Awarding preliminary relief, therefore, is only appropriate 'upon a clear showing that the plaintiff is entitled to such relief.'"  *Id.* (*quoting Winter*, 555 U.S. at 22).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* (*quoting Winter*, 555 U.S. at 20).

"[I]f the record does not at least support a finding of both irreparable injury and a likelihood of success on the merits, then preliminary injunctive relief cannot be granted."  *Heath v. Whipple*, No. CIV.A. 13-282 ERIE, 2013 WL 6881764, at *2 (W.D. Pa. Dec. 31, 2013) (*citing Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987)).

Here, Plaintiff has failed to show that she is entitled to a preliminary injunction, because she has failed to show either that she is likely to succeed on the merits of her case or that she will suffer irreparable harm if an injunction is denied.

### a. Success on the Merits

"To state a claim under § 1983, plaintiffs must show that the defendant, under the color of state law, deprived them of a federal constitutional or statutory right" and "retaliation for the exercise of constitutionally protected rights . . . is itself a violation of rights secured by the Constitution actionable under section 1983." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (internal citations and quotation marks omitted).

To obtain a preliminary injunction in a case alleging retaliation under § 1983, a plaintiff must prove a "reasonable probability that [her] retaliation claims will succeed on the merits" by showing that she engaged in constitutionally protected activity, that the government responded with retaliation and that the protected activity caused the retaliation. *Id.*

The protections of the First Amendment differ for public employees than for private citizens. A government employee "must accept certain limitations on his or her freedom," because

"[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions" in order to maintain "the efficient provision of public services." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (internal citations and quotation marks omitted). "At the same time," however, "a citizen who works for the government is nonetheless a citizen" and "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.*

In the context of a public employee, the First Amendment protects speech when (1) the plaintiff was speaking as a citizen rather than as a public employee discharging her employment duties; (2) the plaintiff's statements addressed a matter of public concern as opposed to a personal interest; and (3) the plaintiff's employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the employee's statement. *See Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 727 (D.N.J. 2013) aff'd, 559 F. App'x 139 (3d Cir. 2014).

As the Supreme Court put it in *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, "[t]he problem in any case is to arrive at a balance between the interests of the . . . citizen[] in commenting upon matters of public concern

and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  391 U.S. 563, 568 (1968).

In *Pickering*, plaintiff teacher wrote a letter to a local newspaper regarding how school operation funds should be spent that was critical of the defendant board of education, and defendant terminated plaintiff's employment as a result.  *Id.*  In reversing this termination, the Court found it significant that the teacher's statements were "neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally."  *Id.* at 572-73.  Consequently, "the interest of the school administration in limiting teachers' opportunities to contribute to public debate [was] not significantly greater than its interest in limiting a similar contribution by any member of the general public."  *Id.* at 573.

Here, Plaintiff alleges pursuant to 42 U.S.C. § 1983 that Defendant violated her rights under the First Amendment of the U.S. Constitution (and the state constitutional analogue, N.J. Const. Art. I, paras. 6 and 18) by terminating her employment as retaliation for her posting her comment on Facebook.  There is no dispute that Defendant's termination of Plaintiff's employment qualifies as retaliatory action and that Plaintiff's

8

post caused Defendant to take that action; the question before the Court is whether Plaintiff's comment qualified as constitutionally protected activity.

Plaintiff, a security guard for the school district, is a public employee, but the Court accepts for purposes of this preliminary injunction that Plaintiff made her comment as a private citizen "on her own time," outside of her job duties, and that the matter was one of public concern, as she expressed her opinion on an item in the local news that related to "the current national debate over police conduct." (Czaplinski Decl., Dkt. No. 1-2 ¶¶ 5, 7) Nonetheless, the Court finds that Plaintiff is unlikely to succeed in her claim that her comment was constitutionally protected, because Defendant likely had adequate justification, based on Plaintiff's position as a security guard, for treating her differently from any other member of the general public.

Unlike in *Pickering*, Plaintiff's statements can reasonably be presumed to impede her proper performance of her daily duties as a security guard. Specifically, Defendant issued the following justifications for her termination:

> Your statement calls into question your effectiveness, going forward, as an unbiased arbiter of student or staff misbehavior or other incidents which call upon impartial judgment including respect and tolerance for diversity. . . . A security officer engages in daily corrective action to help guide young people by justly and fairly evaluating situations and applying district

9

>policies/procedures. Your pronouncement has greatly jeopardized your ability to effectively conduct the business of public school safety and security because it reasonably calls into question the basis of your decision-making.

(Ex. J-1 to Czaplinski Decl., Dkt. No. 1-2)

The Court recognizes that "apprehension of disturbance is not enough to overcome the right to freedom of expression." *Flanagan v. Munger*, 890 F.2d 1557, 1567 (10th Cir. 1989) (citations removed). In *Flanagan*, the Tenth Circuit found that defendants police chief and city violated plaintiff police officers' first amendment rights by disciplining the officers for selling adult videos where "[t]he record is devoid of evidence of actual or potential internal disruption caused by plaintiffs' speech" and "[d]efendants' evidence pointed only to potential problems which might be caused by the public's reaction to plaintiffs' speech." *Id.* at 1566-67.

At the same time, however, an employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Locurto v. Giuliani*, 447 F.3d 159, 182 (2d Cir. 2006) (*quoting Connick v. Myers*, 461 U.S. 138, 152 (1983)). In *Locurto*, plaintiff police and firefighters were disciplined for participating in a Labor Day parade in which they wore 'blackface,' mocked stereotypes of African-Americans, and jokingly mimed a recent hate crime. *Id.* at 164, 182. Noting

10

that "effective police and fire service presupposes respect for members of [African-American and other minority] communities," the *Locurto* Court found that defendants legitimately took into account the reactions of those communities in disciplining plaintiffs and also found it permissible that defendants' motive for the discipline was the "concern for the potential disruption the plaintiffs' activities would cause to the NYPD and FDNY, in particular by engendering and perpetuating a public perception of those Departments as racially insensitive."  *Id.* at 182-83.

Here, Plaintiff's job as a security guard is to resolve disputes and maintain peace.  As evidenced by the anonymous e-mail, at least one person found Plaintiff's comments racist and troubling, and to the extent the comments contributed to a perceived racial bias, they arguably undermined both Plaintiff's individual authority in the eyes of the students and staff, as well as the authority of security guards more generally, impairing Defendant's ability to "operate efficiently and effectively."  *Garcetti*, 547 U.S. at 418.

Because Plaintiff has failed to show how her interest in free speech likely outweighs Defendant's interest in avoiding a perception of racial bias and maintaining security, she has failed at this stage to show a likelihood of success on the merits of her claim pursuant to § 1983.  Plaintiff's request for a preliminary injunction will therefore be denied.

**b. Irreparable Harm**

Even if Plaintiff had shown a likelihood of success on the merits, she has failed to show that she faces irreparable harm without a preliminary injunction or that such an injunction would prevent or redress the type of harm she alleges.

Monetary harm alone does not constitute irreparable harm for purposes of injunctive relief, because if a party prevails, it can be compensated with money damages issued at the close of the matter.  *See Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987)  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," but "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction" and "the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits."  *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) (internal citation and quotation marks omitted).  "Rather the plaintiffs must show a chilling effect on free expression."  *Id.* at 73.

Here, Plaintiff asserts the following injuries:

> I have lost my job, which I need.  I have been penalized for exercising my rights as a private citizen to speak out on a public issue.  I now feel as if I must think twice before I speak out or comment on an issue that matters to me.

(Czaplinski Decl., Dkt. No. 1-2 ¶ 21)

Plaintiff's loss of her job can be compensated through money damages and therefore does not justify injunctive relief. In addition, based on the limits of First Amendment protection already discussed with regard to Plaintiff's likelihood of success on the merits of her claim, it is not clear that the speech chilled by Defendant's termination presents a constitutional harm. To the extent it does, it is also not clear that a preliminary injunction redresses that harm. As the Second Circuit put it in *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, "we fail to understand how a chilling of the right to speak . . . could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech . . . stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction."  766 F.2d 715, 722 (2d Cir. 1985) Consequently, the Court finds that Plaintiff has failed to show irreparable harm to justify the relief she seeks.

### III. Conclusion

Plaintiff has failed to show that she is entitled to a preliminary injunction against Defendant's termination of her employment, because she has failed to show a likelihood of

13

success on the merits of her claim and irreparable harm if such injunction is not granted.  Plaintiff's request for preliminary injunctive relief will therefore be DENIED.  An appropriate Order accompanies this Opinion.

Date: 3-26-15

                                          s/ Joseph E. Irenas
                                      **JOSEPH E. IRENAS, S.U.S.D.J.**